**GOVERNMENT EMPLOYEES INS. CO. v. POWELL et al.**

**No. 171, Docket 20474.**

Circuit Court of Appeals, Second Circuit.

March 3, 1947.

---

Gumbart, Corbin, Tyler & Cooper, of New Haven, Conn. (Morris Tyler and J. Stephen Knight, both of New Haven, Conn., of counsel), for appellant.

John F. McGowan, of Bridgeport, Conn., for August A. and Albert J. Powell, appellees.

Adrian W. Maher, of Bridgeport, Conn., for Jean Sturrock, appellee.

Richard Weldon, of Bridgeport, Conn., for Albert Dyson and Ivy Lefkowitz, appellees.

Before SWAN, CHASE, and CLARK, Circuit Judges:

SWAN, Circuit Judge.

This is an action by an insurance company, brought in the federal court on the ground of diverse citizenship, for a judgment declaring void a renewal policy of automobile liability insurance issued to Albert J. Powell. The complaint alleged as grounds for the requested annulment fraudulent misrepresentations and concealment of material facts by August A. Powell, a brother of the insured, who acted as his agent in obtaining the renewal policy. The other defendants were persons claiming to have sustained personal injury or property damage as the result of an accident in which the insured's car was involved. The district court held the renewal policy valid. From the ensuing judgment of dismissal the plaintiff has appealed.

The facts are substantially undisputed. The original policy was issued to Albert J. Powell, a lieutenant in the United States Army, whose home was in Bridgeport, Conn., where he lived with his mother and his brother August. In December 1944 Lt. Powell was ordered overseas. He left his car in Bridgeport, giving his brother full permission to use it and instructing him to renew the insurance policy which was to expire on January 27, 1945. In due time August Powell mailed to the insurance company a renewal application signed

"Lt. Albert J. Powell," and accompanied by a letter similarly signed. The letter was required in explanation of an affirmative answer to one of the questions in the renewal application, and read as follows:

"My brother, August Andrew Powell, who occasionally drives my car, was arrested July 13, 1941 for driving under the influence. He received a limited license on Dec. 2, 1942. He now has a regular license which became effective Sept. 5, 1944."

On February 5, 1945, the insurance company issued its renewal policy and forwarded it to Lt. Powell with a letter which contained the following paragraph:

"For the completion of our file records, it will be greatly appreciated if you will advise us of the age of your brother, August Andrew Powell, also the purposes for which he will use your automobile and how often he will have occasion to operate the automobile. It is not necessary that you write a letter on this matter but merely jot the information requested on the reverse side of this letter and return it in the enclosed self-addressed envelope."

Having received no reply to this letter, the company wrote again on February 27th saying:

"As your brother was arrested for operating an automobile while under the influence, it is necessary that we have information regarding the operation of your automobile, insured under the above numbered policy, by your brother. Unless we are in receipt of this information by March 14, 1945 it will be necessary that we endorse your policy excluding coverage under our policy when the automobile is being operated by any one other than you, the named insured."

August Powell then wrote the company in Lt. Powell's name:

"In regard to your inquiry made about my brother, August Andrew Powell, he is 26 years of age. Uses my car once a week to go shopping, and once or twice a week to commute to work."

On May 13, 1945, shortly after midnight, August Powell was involved in an automobile accident while driving his brother's car. On the previous afternoon he took the car to go to work and, after finishing work at 11 P.M., he went with friends on a "party"; he was under the influence of liquor at the time of the accident. To a charge of driving in this condition he pleaded guilty.

■ The district court found that August acted in good faith in signing his brother's name, and held that his failure to disclose that he was acting as Albert's agent and that Albert had gone overseas was neither a misrepresentation nor a concealment of any material fact. We agree. Century Indemnity Co. v. Shergold, 2 Cir., 135 F.2d 568.

■ We cannot agree, however, with the holding that August's failure to disclose that he had sole custody of the car, with permission to use it when and as he pleased, was not a material concealment. The company's letter of February 5th addressed to Albert inquired expressly as to "the purposes for which" your brother August "will use your automobile and how often he will have occasion to operate the automobile." How important the company considered such information clearly appeared from the second letter which stated that coverage would be restricted to operation of the car by the named insured unless the requested information was promptly furnished. Since the policy covered operation of the car by persons other than the named insured "provided the actual use of the automobile is with the permission of the Named Insured," the company's inquiry was obviously intended to elicit information as to how often and for what purposes Albert would permit his brother to operate the car. Had Albert himself received these letters, fair dealing would have required him to say that August had permission to use the car for any purpose and whenever he pleased. August's reply concealed the extent of the permission given him, even though he may honestly have intended to use the car only two or three times a week and for the purposes stated. It was not his intention, but the extent, of Albert's authorization to him, that was important to the insurance com-

pany in view of his previous record of drunken driving. August was not likely to be drunk while going to or returning from work. If his authorized use of the car were so restricted and he used the car for some other purpose, the insurance would not cover it. Frederiksen v. Employers' Liability Assur. Corp., 9 Cir., 26 F.2d 76; cf. Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A. L.R. 500. But if, as was actually the fact, he had permission to use the car for any purpose and whenever he pleased, the insurance risk was obviously increased. Moreover, even if we had doubt, which we do not, as to the materiality of the information which the company requested, we should have to resolve it in favor of the company, since its letters of inquiry showed that the extent of the authority given August to use the car was considered by the insurer a matter material to the risk. See Kerr v. Union Marine Ins. Co., 2 Cir., 130 F. 415, 417, certiorari denied 194 U.S. 635, 24 S.Ct. 858, 48 L.Ed. 1160; Bella S. S. Co. v. Insurance Co. of No. Am., 4 Cir., 5 F.2d 570, 572.

Insurance policies are contracts uberrimae fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. Stipcich v. Insurance Co., 277 U.S. 311, 316, 48 S.Ct. 512, 72 L.Ed. 895; Hare & Case v. National Surety Co., 2 Cir., 60 F.2d 909, 911, certiorari denied 287 U.S. 662, 53 S.Ct. 222, 77 L.Ed. 572; N. Y. Life Ins. Co. v. Gay, 6 Cir., 36 F.2d 634, 638; Sebring v. Fidelity-Phenix Fire Ins. Co., 255 N.Y. 382, 174 N.E. 761. August's letter of March 1st did not measure up to this standard; and it is immaterial whether or not he actually intended to deceive the company.[1] In applying for renewal of the policy he was acting as the agent of the insured and his misrepresentation or con-

cealment of the extent of the permission given him to use the car is as fatal to the validity of the policy as if made by the insured himself. See Carpenter v. American Ins. Co., C.C.R.I., Fed.Cas. No. 2428; Hayat Carpet Cleaning Co. v. Northern Assur. Co., 2 Cir., 69 F.2d 805; Davis-Scofield Co. v. Agricultural Ins. Co., 109 Conn. 673, 145 A. 38.

Accordingly the judgment of dismissal must be, and is, reversed.

---

[1] The renewal policy having been delivered in Connecticut, the law of that state governs the interpretation of the policy (Rosenthal v. N. Y. Life Ins. Co., 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330), and we shall assume that it also governs the insured's duty of disclosure. We have found nothing in the Connecti-

cut decisions to indicate that the local law differs from the general law in respect to the duty of disclosure; on the contrary they appear to be in complete accord. See Bebee v. Hartford County Mut. Life Ins. Co., 25 Conn. 51, 65 Am. Dec. 553; Davis-Scofield Co. v. Agricultural Ins. Co., 109 Conn. 673, 145 A. 38.